Raymond E. MOHOLLAND

v.

Richard S. SCHWEIKER, Secretary, Health and Human Services.

No. C 80–451–L.

United States District Court, D. New Hampshire.

Aug. 26, 1982.

Christopher A. Wyskiel, Dover, N.H., for plaintiff.

W. Stephen Thayer, III, U.S. Atty., Concord, N.H., for defendant.

## ORDER

LOUGHLIN, District Judge.

This action was brought to review a final determination of the Secretary of Health and Human Services denying plaintiff's application for disability insurance benefits. That determination was ultimately reversed and remanded for the award of benefits. Plaintiff has now moved for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(3). Because it is so integral to the attorney's fees question, the court turns first to a review of the procedural history of this litigation.

Plaintiff filed his complaint September 12, 1980. This court reversed and remanded the case for further administration proceedings January 16, 1981. The court ruled that the Secretary had failed to sustain its burden of showing jobs which plaintiff could perform in the national economy. Specifically, the Secretary failed to establish by substantial evidence, that the plaintiff had the residual functional capacity to perform sedentary work. The case was remanded to enable the Secretary to establish through a vocational expert that plaintiff could do sedentary work.

The Secretary moved for reconsideration January 30, 1981. The basis of this motion was that the Secretary's determination was compelled by application of 20 CFR Part 404, Subpart P, Appendix 2, the "grids". The Secretary argued that the ALJ's determination that plaintiff could perform sedentary labor was supported by substantial evidence and the case law. The Secretary contended that a vocational expert was not necessary to establish jobs in the national economy, because the existence of such jobs has been administratively noticed in the grids. The order on the motion for reconsideration sought to impress upon the Secretary that the purpose of the remand was not to adduce evidence of specific jobs, but to adduce evidence of plaintiff's residual functional capacity. The case was remanded to the Secretary.

The Appeals Council in turn remanded to the Administrative Law Judge, who propounded written interrogatories to a vocational expert. However, rather than addressing the issue of plaintiff's residual functional capacity, the interrogatories directed the expert to *assume* the plaintiff could perform sedentary work, concluding the very issue the remand addressed. The ALJ's recommended decision, adopted by the Appeals Council, and therefore the final determination of the Secretary, found that the plaintiff could do sedentary work and was not disabled under the grids. This court reversed by order of November 2, 1981, and remanded for the computation of benefits.

The Secretary moved November 30, 1981 for an order affirming the decision of the Secretary. The plaintiff moved for contempt December 9, 1981. Both motions were withdrawn by stipulation December 17, 1981. Presently pending is plaintiff's motion for attorney's fees under the Equal Access to Justice Act (EAJA).

Defendant's objection raises three arguments:[1] that services provided prior to the

---

1. A fourth, that the motion for attorney's fees was not timely filed, is not addressed by the parties. 28 USC § 2412(d)(1)(B) requires that a motion for fees under EAJA be brought within thirty days of the entry of final judgment.

This limitation period must be strictly applied, as the statute is a waiver of sovereign immunity. *Rhode Island Committee on Energy v. General Services Administration*, 561 F.2d 397 (1st Cir. 1977). Plaintiff's motion for late filing was

effective date of EAJA may not be compensated under the act, that the government's position was substantially justified, and that special circumstances make an award of fees unjust in this case. The court takes up these issues seriatim.

■■■ As plaintiff points out, the effective date provision of the EAJA refers to the timing of the case and not the timing of the services rendered. Pub. L. 96–481, Title II, § 208 provides in part:

This title shall take effect October 1, 1981 and apply to any ... civil action ... which is pending on, or commenced on or after, such date.

Cases construing this provision · have allowed fees for services rendered prior to the effective date where the case was pending as of the effective date. *Kennedy v. United States,* 542 F.Supp. 1046 (D.N.H. 1982); *Photo Data Inc. v. Sawyer,* 533 F.Supp. 348, 350 (D.D.C. 1982). *But cf. Matthews v. United States,* 526 F.Supp. 993 (M.D. Ga. 1981), (case pending only due to court's delay in drafting opinion.) The court rules that plaintiff may recover attorney's fees, provided he meets the other requirements of EAJA, for services rendered prior to the effective date in connection with a suit pending on the effective date.

■■■ The government next contends that its position in this litigation was substantially justified. It is clear from their argument that the government interprets "position", which is undefined in the EAJA, to refer to its position on the underlying issues. Plaintiff argues that the government's actions in defending the lawsuit are not substantially justified implicitly interpreting "position" to mean trial conduct. There is support for both arguments. *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225 (D. Md. 1981) supports plaintiff's view. The court there stated:

Although the question is a close one, I have concluded that the statute refers to the Government's actions or position in prosecuting or defending litigation, not to

its actions upon which suit is based. The statutory language is similar to that of F.R. Civ. P. 37(a)(4), which provides that a party prevailing on a motion for sanctions for failure to comply with discovery requests may obtain attorneys' fees "unless the court finds the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." The language of the rule is clearer than that of the statute; it refers to a party's justification for opposing a motion for sanctions.

There are references in legislative reports to the reasonableness of Government "action," which may be read as referring to its primary actions. H. Rep. 96–1418 at 5, 9, 10, 18; H. Conf. Rep. 96–1434 at 21, 22, reprinted in [1980] U.S. Code Cong. & Ad. News at 4984, 4988, 4989, 4997 and 5010, 5011. These references must be read in light of Congress' concern with Government action in administrative or judicial enforcement proceedings, where the action *is* the litigation posture. *See* H. Rep. 96–1418 at 11. H. Conf. Rep. 96–1434 at 22, *reprinted in* [1980] U.S. Code Cong. & Ad. News at 4989–90, 5011.

*Photodata NC v. Sawyer, supra,* examines the *Alspach* view but reaches a contrary conclusion. The court states:

The Court draws instruction from parallel language in Fed. R. Civ. P. 37(a)(4). Under that Rule a court may require the losing party to a motion to compel discovery to pay attorneys' fees if that party was not "substantially justified" in opposing or making the motion. The Advisory Committee stated that this remedy was created to "deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." Advisory Committee's Note to 1970 Amendment of Fed. R. Civ. P. 37(a)(4), 48 F.R.D. 487, 540. Likewise, the Act is intended to proscribe frivolous government action that forces a party to resort

granted by default under Rule 11, D.N.H.R. Civ. P. Whether this waiver is sufficient to extend

the time period of EAJA has not been raised.

to the courts to redress its rights. It would contradict the remedial purpose of the Act to interpret it to isolate and focus upon the reasonableness of only a single element of the government's actions, when the entire factual background may suggest a contrary conclusion.

This court agrees with the latter view. The purpose of the EAJA is to place small litigants and the government on equal financial footing so that the economics of challenging an unreasonable government position will not negatively impact on the decision to seek judicial relief. Obviously, this determination is made prior to the action, and therefore will not be swayed by the potential that the government might not comport itself with proper adversarial etiquette. Furthermore, there were remedies to recalcitrant litigant behavior available prior to the enactment of the EAJA. *See, Webb v. Harris,* 88 F.R.D. 170 (N.D. Ill. 1980), (Attorneys fees incurred in procuring show cause order awarded as sanction in Social Security case). *Cf. Rhode Island Comm. on Energy v. General Services,* 561 F.2d 397, 401 (1st Cir. 1977), (no "bad faith" exception to 28 U.S.C. § 2412 where fees are sought on case in chief). There is no logical need for remedial legislation to provide what was already available. The focus under 28 U.S.C. § 2412(d)(1)(A) is upon the government's position on the underlying litigation, and not its trial conduct.[2]

■ The burden of establishing substantial justification is upon the government. *Photo Data Inc. v. Sawyer, supra* at 351. It is not sufficient to meet this burden that the government demonstrate a genuine dispute between the parties, it must justify its position that is in dispute. *Ibid.* The issue upon which this litigation hinged was whether the Secretary's determination that plaintiff had the residual functional capacity to perform sedentary work was based upon substantial evidence. The government argues that this Court's ruling that the Secretary's decision was not based

upon substantial evidence does not automatically establish that the government's position was unjustified. The court disagrees. The burden is upon the government; if the government failed to come forward with reasons in justification, it has not met this burden. The Secretary's memorandum makes no showing of how a determination of residual functional capacity to do sedentary work is justified given the lack of evidence as to the criteria of sedentary work in the agency record. The ALJ's determination made a quantum leap from presumption to conclusion. The government's reliance upon this position is not substantially justified.

■ The government next argues that the existence of special circumstances would make an award unjust. The basis of this argument appears to be that the government did nothing to plaintiff, it merely defended its position. The special circumstances exception to fees is a limited one. The House Committee on the Judiciary Report indicates:

This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H. Rep. 96–1418 at 11, *reprinted in* U.S. Code Cong. & Ad. News 4953 at 4990 (1980). The government has not suggested any novel extensions or new interpretations of law it sought to test by this litigation. The equities favor the plaintiff; rather than not seeking "to compel plaintiff to do or refrain from doing anything, nor ... to impose a liability upon [him]", Defendant's Memorandum at 9, what the government did here was to terminate plaintiff's means of existence without substantial evidence for so doing. The court rules that there are no special circumstances here that would make an award of fees unjust.

**2.** The court also opines that plaintiff is on thin ice in pressing his claim for fees as to the government's trial conduct. That conduct was the subject of a motion for contempt, which included a prayer for attorney's fees. That

motion was withdrawn by stipulation. Unless the government agrees to release the plaintiff from that stipulation by word or by conduct, this court will not tolerate attempts to sidestep the intent, if not the letter, of the stipulation.

In summation, the court rules that plaintiff is a prevailing party, that the government's position is not substantially justified, and that no special circumstances exist making an award unjust. We turn now to a computation of the fees to be allowed.

This Circuit follows a two step approach in setting attorney's fees established in *Furtado v. Bishop,* 635 F.2d 915 (1st Cir. 1980). The first step involves the calculation of a lodestar. The court must determine a reasonable number of hours required to prosecute plaintiff's lawsuit, and a reasonable hourly rate. These two are multiplied to determine the lodestar.

The court is guided in determining the reasonable number of hours by the timesheets submitted by counsel, adjusted according to the considerations in *King v. Greenblatt,* 560 F.2d 1024, 1026–27 (1st Cir. 1977), the arguments of the parties, and the sound discretion and experience of the court. Plaintiff's counsel has submitted time sheets indicating thirty-nine and a third hours spent prosecuting this case. The court has examined this itemization, and rules that it is reasonable.

Plaintiff's counsel requests compensation at the rate of $100 per hour. The *Furtado* court pointed out that it is the court's responsibility to assign what is reasonable for the different activity levels involved. 635 F.2d at 920. *See, also, King v. Greenblatt, supra* at 1927. The following rates have been used by this District in the past, *see Johnson v. Claremont Housing Authority,* Civ. No. 81–343–D (D.N.H. Oct. 30, 1980); *Goss v. Helms,* Civ. No. 81–225–L (Feb. 24, 1982), and the court rules that they are reasonable hourly rates under the *Furtado* analysis:

| Rate per hour | Activity |
| --- | --- |
| $50.00 | Court time, depositions |
| $40.00 | Client interviewing, negotiations |
| $30.00 | Research, document preparation, investigation |
| $10.00 | Secretarial, clerical |

The court rules that a reasonable lodestar in this case is $1,234.90.

The second step in the *Furtado* analysis is to adjust the lodestar to reflect other factors not included in the process up to this point. The burden of establishing and justifying those factors is upon the parties. None having been brought to the court's attention, no adjustment will be made. Plaintiff is awarded $1,234.90 in counsel fees, plus $4.50 in costs.

So Ordered.